IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| WILLIAM HURD, | |
| Plaintiff, | **8:23CV201** |
| vs. | |
| UNION PACIFIC RAILROAD CO., | **ORDER** |
| Defendant. | |

This matter comes before the Court on Plaintiff's motion to compel the production of certain consulting agreements, which Plaintiff was given leave to file following an informal discovery dispute conference. Filing No. 43. For the reasons stated herein, the Court grants the motion to compel.

## I.    BACKGROUND

This is an ADA case in which Plaintiff, William Hurd, claims Defendant, Union Pacific Railroad Company ("Union Pacific"), utilized its fitness-for-duty procedure to hold him out of work based on a non-work-related head injury. Plaintiff seeks discovery relating to consulting contracts with two doctors formerly employed by Defendant, Dr. John Holland and Dr. John Charbonneau, and one doctor employed by the University of Nebraska Medical Center ("UNMC"), Dr. T. Scott Diesing.

During their depositions, Doctors Charbonneau and Holland testified to entering into contracts with Union Pacific for consulting and testifying in the present case. Dr. Charbonneau testified Union Pacific pays him $300 per hour to review documents, $500 per hour of deposition testimony, and either $600 or $750 per hour for trial testimony. Filing No. 45-5 at 4. Similarly, Dr. Holland testified he was paid $400 hourly for review and

preparation and $500 for deposition and trial testimony. Filing No. 45-6 at 3. Dr. Diesing was disclosed as a retained expert for Union Pacific. Filing No. 45-4 at 1; Filing No. 45-10.

Hurd propounded discovery to Union Pacific relating to these agreements with Drs. Charbonneau, Holland, and Diesing. In particular, Hurd's requests for production 21 and 22 seek, in relevant part all documents related to "any agreement(s)" between Union Pacific and Charbonneau and Holland pertaining to the doctors' "retention as a witness in this case, including a listing of all hours worked and payments provided . . . for [their] work in this case." Filing No. 45-1 at 15–16. Hurd's requests 23 and 25 seek similar information as to Diesing and his employer, UNMC. Filing No. 45-1 at 16; Filing No. 45-2 at 3. Lastly, Hurd seeks documents demonstrating the compensation and bonuses paid to Charbonneau and Holland for fitness for duty determinations from 2014 to the present, and to Diesing and UNMC for consulting or expert-witness work relating to fitness for duty determinations from 2014 to the present. Filing No. 45-2 at 4–5. Pacific objects to these requests. Filing No. 45-1 at 15–16; Filing No. 45-2 at 3–6. After an informal discovery dispute conference, Hurd was given leave to file a motion to compel.

## II.   ANALYSIS

### A. Legal Standard

Federal Rule of Civil Procedure 26 governs the scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

2

Fed. R. Civ. P. 26(b)(1). Although relevance is broadly construed for discovery purposes, the proponent of the discovery must make "[s]ome threshold showing of relevance . . . before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." *Prism Techs., LLC v. Adobe Sys., Inc.*, 284 F.R.D. 448, 449 (D. Neb. 2012) (quoting *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992)). Information within this scope of discovery need not be admissible in evidence to be discoverable. Fed. R. Civ. P. 26(b)(1). Instead, it must be reasonably calculated to lead to the discovery of admissible evidence. *Humphreys & Partners Architects, L.P. v. Com. Inv. Properties, Inc.*, No. 4:19CV3046, 2021 WL 3511132, at *2 (D. Neb. Aug. 10, 2021); *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). As relevant here, "[e]vidence of bias is relevant to impeach a witness." *Russell v. Anderson*, 966 F.3d 711, 730 (8th Cir. 2020) (citing *United States v. Abel*, 469 U.S. 45, 51 (1984)).

## A. Consultancy Arrangements with Charbonneau and Holland

Hurd first seeks the consulting agreements and payment information for Drs. Charbonneau and Holland. Union Pacific argues 1) the agreements are not relevant because they do not directly reference Hurd and the witnesses already testified they had such agreements in their depositions; 2) a Magistrate Judge's discovery ruling in a separate case already resolved this dispute in Union Pacific's favor, and 3) information about Holland and Charbonneau's pay structure violates their privacy interests.

First, the consulting agreements are relevant in that they could lead to admissible evidence of either witness's bias. *See Russell*, 966 F.3d at 730 ("Evidence of bias is relevant to impeach a witness."). Although the agreements do not directly reference Hurd,

3

they pertain to the witnesses' potential motivation to provide favorable evaluations and testimony to Union Pacific in Hurd's case. Furthermore, the mere fact the witnesses have already testified to the agreements' existence in their depositions does not relieve Union Pacific of its duty to fully respond to the discovery requests. In fact, Dr. Charbonneau testified he could not remember if he was paid $600 or $750 per hour for trial testimony, making the written agreement itself all the more important. Filing No. 45-5 at 4.

The case which Union Pacific claims already resolved this question, *Meza v. Union Pacific*, 8:22-cv-102, is neither binding nor directly on point. In that case, then-Magistrate Judge Bazis declined to order Union Pacific to produce certain expert consulting agreements. However, her ruling was based in large part on the fact that the wording of that plaintiff's discovery requests did not actually seek the agreements themselves. Case No. 8:22-cv-102, Filing No. 104 at 21 (Magistrate Judge Bazis stating the "bigger concern" is that the discovery requests relate to job descriptions rather than consulting agreements). Here, there is no doubt that Hurd's discovery requests are properly worded to seek the agreements. Furthermore, a pretrial ruling in a separate case would not be binding on the Court in a separate matter even if it were factually similar.

Lastly, Union Pacific's purported concerns about the doctors' privacy interests do not prevent Hurd from discovering the consulting and payment information he seeks. Defendant correctly argues that requests for "nonparty personnel information" require the plaintiff to show that the value of the requested discovery outweighs the affected individuals' privacy interests. *Case v. Platte Cnty.*, No. 8:03CV160, 2004 WL 1944777, at *3 (D. Neb. June 11, 2004) (citing *Onwuka v. Fed. Express Corp.*, 178 F.R.D. 508, 517 (D. Minn. 1997)). However, the cases Defendant relies on are inapposite. For example,

Union Pacific cites to *Case v. Platte County*, but in that case the Plaintiff sought the entire employment files of all of plaintiff's supervisors. 2004 WL 1944777, at *3. Here, Hurd's requests are much narrower in that he seeks only information relating to pay arrangements with the three witnesses in this case, not entire personnel files for whole groups of individuals unassociated with the case. Any minor intrusion on the witnesses' privacy interests in revealing their consulting fees is outweighed by the potential value of the discovery to Hurd's case. Accordingly, Hurd's motion to compel is granted as to the requests relating to Charbonneau and Holland.

### B. Consultancy Arrangements with Diesing and UNMC

Next, Hurd seeks to discover information relating to consulting agreements between Union Pacific and Diesing and between Union Pacific and Diesing's employer, UNMC, wherein Diesing provided consulting services and testified as an expert witness in various cases including the present one. Union Pacific argues that ten years' worth of payment information is irrelevant, that contracts between Union Pacific and UNMC (as opposed to those with Diesing directly) are not relevant, and that the information again implicates privacy concerns. As with the requests relating to Holland and Charbonneau, the information Hurd seeks is relevant to the potential bias of Dr. Diesing and therefore relevant. Union Pacific claims any contract it had with UNMC did not impact Diesing's testimony, but Hurd is entitled to discover any relevant contracts that implicate Diesing to assess the impact for himself. Furthermore, because the request is not overly broad, it does not implicate privacy concerns which would outweigh its discoverability. As with the similar requests relating to Doctors Holland and Charbonneau, Hurd seeks information only about payments made to UNMC and Diesing, not all personnel information broadly.

Accordingly, his motion to compel the consultancy arrangements as to Diesing and UNMC is also granted.

IT IS ORDERED:

1. Plaintiff's Motion to Compel, Filing No. 43, is granted, and Defendant is ordered to fully answer Plaintiff's discovery requests relating to the consulting agreements as outlined herein.

2. Pursuant to Federal Rule of Civil Procedure 53(f) and the Order Appointing Master in this case, Filing No. 37, the parties have 21 days to object to this order.

Dated this 1st day of November, 2024.

SIGNED:

s/ Kate O. Rahel
Appointed Special Master